UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANGELA JONES and RASHEDA GANDOLFO** | **CIVIL ACTION** |
| **VERSUS** | **NO:     14-2304** |
| **BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM, MICHAEL PRESCOTT, KEVIN KNUDSEN, KEVIN BRADY, CARMEN BRAY and MIKE MCGILL (In their Individual and Official Capacities)** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

## ORDER & REASONS

Before the Court is a **Motion for Summary Judgment on Behalf of Defendants Michael Prescott, Kevin Knudsen, and Mike McGill (R. Doc. 59)** filed by Defendants Michael Prescott, Kevin Knudsen, and Mike McGill seeking an Order from the Court granting summary judgment against Plaintiffs and dismissing Plaintiffs' 42 U.S.C. § 1985(3) claim against them with prejudice. The motion is opposed. R. Doc. 66.

### I.     Factual Background

This is an employment discrimination case filed pursuant to the Due Process Clause of the Fifth Amendment of the U.S. Constitution, the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, Title VII of the Civil Rights Act of 1964, 5 U.S.C. § 2302, and 42 U.S.C. § 1985(3). R. Doc. 1, p. 1. Plaintiffs, Angela Jones ("Jones") and Rasheda Gandolfo ("Gandolfo"), both African-American women who worked as parking enforcement officers for Southeastern Louisiana University ("SLU") filed this action against their former employer, the Board of Supervisors of the University of Louisiana System ("University"), who managed SLU.  Jones seeks damages for wrongful termination and retaliation and Gandolfo seeks damages for retaliation and sexual harassment.

Plaintiffs also filed this action against the former chief of SLU's Police Department, the Interim Chief of Police for SLU, several lower ranking supervisors, and the Human Resources Director, all of whom are white males, for conspiring to create a hostile work environment in

violation of 42 U.S.C. § 1985(3). *Id.* at 21.  Jones and Gandolfo also seek to recover punitive damages against each defendant sued in their individual capacities namely Prescott, Knudsen Brady, Bray, and McGill for their reckless disregard and indifference to their rights. (Complaint Rec. Doc. 1, ¶ 3).

Jones alleges that she was subjected to unfair treatment and harassment based on race and gender. *See* R. Doc. 1, p. 1.  She alleges that various employees of SLU used racial epithets, such as "Nigger", to harass her based on her race. *Id.* at 5. Jones alleges that Prescott and Knudsen, the Department's former Chief of Police and a Captain, subjected her to race based and sex based discrimination by blocking her from being promoted to Police Officer I, a position for which she was qualified. R. Doc. 1, p. 7. Prescott was forced later to resign as Chief of Police due to payroll fraud and allegedly falsely accused Jones of reporting him to the SLU auditors. *Id.* at 8. Jones also contends that while she was terminated for poor performance, only African-American females were terminated on this ground whereas white employees were allowed to resign. *Id.* at 9.

Rasheda Gandolfo, who was employed at SLU as a student worker for SLU's Parking Division, alleges that she was exposed to sexually inappropriate comments and behavior by her co-worker, Dennis Elzey. *Id.* at 12. She alleges that Elzey would make crude comments such as "What is that hanging down your leg? A really long thong?." Further, Gandolfo alleges that Elzey would tap her on her buttock, call her "Bitch," and commented that she "should try out for Playboy." *Id.* at 13. Gandolfo alleges that she informed SLU's EEOC Compliance Officer, Eugene Prejean, and that Elzey received a two-day suspension. *Id.* at 14. Gandolfo alleges that after she filed her grievance against Elzey, he continued to follow her even though he was told by his supervisors not to communicate with her. *Id.* at 16.

Gandolfo alleges that because of her persistent complaints, Prescott assigned her to the position of timekeeper for the entire SLU Parking Division and Police Department. She alleges

that her new assignment constituted retaliation because it was too voluminous to be assigned to one person and had never been assigned to one person before.

Additionally after being required to attend a class on harassment she began to experience humiliation and was overwhelmed with anxieties resulting in her taking time off from class. The next month, Gandolfo was terminated for "low leave balance" even though she had not exhausted her leave time. In contrast, Gandolfo alleges that for her white female employees the University persuaded other employees to pool their leave hours to donate them. Further, Gandolfo alleges that the University did not terminated a white, female employee who was caught stealing whereas she was terminated for coming close to running out of leave time. *Id.* at 18.

## II.     Procedural History

On May 27, 2015, pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6), the Court granted, in part, Defendants' Motion to Dismiss (R. Doc. 5) and dismissed Plaintiffs' Due Process Clause of the Fifth Amendment; Due Process Clause of the Fourteenth Amendment; the Equal Protection Claim of the Fourteenth Amendment for retaliation; and Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8) claims against the University. *See* R. Doc. 16, p. 18. Thus, Plaintiffs' viable claims that remain against the University are pursuant to the Equal Protection Claim of the Fourteenth Amendment for race-based wrongful termination and sexual harassment and Title VII for wrongful termination, sexual harassment, and retaliation. *See id.* at 17.

Further, on November 15, 2015, pursuant to FRCP 12(c), the Court denied Defendants' Motions to Dismiss (R. Docs. 40, 42). The Court held that, based on their pleadings, Plaintiffs asserted sufficient factual allegations to assert additional rights under §§ 1981 and 1983. The Court also held that Plaintiffs' §§ 1981 and 1985 claims were not timed barred because those claims were premised on Plaintiffs' § 1981 claim, for which a four-year prescriptive period was applied. *See* R. Doc. 65.

Defendants Prescott, Knudsen, and McGill filed the subject motion seeking dismissal of the claims asserted by Jones and Gandolfo on several grounds: (1) plaintiffs claim that the defendants conspired to violate their civil rights fails as a matter of law and (2) that the neither of the defendants can be held liable under the conspiracy claim because they had no authority to terminate Jones.

Jones and Gandolfo oppose the subject motion. Jones contends that the affidavit of O'Neil DeNoux indicates that he attended a meeting of Prescott's inner circle where a decision and plan to terminate Jones was discussed. The plaintiffs do not provide a response regarding the conspiracy claims of Gandolfo. R. Doc. 66, p. 1.

### III. Standard of Review

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S. Ct. 2548 (1986). In such a case the moving party must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. United Healthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).

Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson*, 477 U.S. at 252. The moving party's burden is therefore "understandably heavier" where that party is the plaintiff. *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437, 447 (E.D. La. 2011).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322–24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255. However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment). Though the Court may not evaluate evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 254.

Moreover, credibility determinations have no place in summary judgment proceedings. *See Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir. 1993); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987). The non-movant's summary judgment evidence must be taken as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A Court view facts in the light most favorable to the non-movant and draw all reasonable inferences in his favor. *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994). If the non-

movant sets forth specific facts in support of allegations essential to her claim, a genuine issue of material fact is presented, and summary judgment is inappropriate. *Id.* Summary judgment may be improper, even though the basic facts are undisputed, if the ultimate facts in question are to be inferred from them, and the parties disagree regarding the permissible inferences that can be drawn from the basic facts. *Winters v. Highlands Insurance Company*, 569 F.2d 297, 299 (5th Cir. 1978). "'(T)he choice between permissible inferences is for the trier of facts.'" *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir. 1978). Where a jury is called for, the litigants are entitled to have the jury choose between conflicting inferences from basic facts. *Id.*

**IV.     Analysis**

    **A.     Conspiracy to Terminate Jones**

The defendants set forth several reasons why Jones conspiracy claim fails: (1) that she was terminated due to her failure to perform and not as a result of a conspiracy, and (2) that neither of them had the authority to terminate her. Specifically the defendants contend that there is not enough evidence to support Jones's claim that they conspired against her which resulted in her termination. The defendants further contend that there is insufficient evidence that Jones's termination was in anyway due to her race. In fact, the evidence of record shows that she failed to perform in six different areas as determined by the Civil Service Decision.

To make out a claim under 42 U.S.C. § 1985(3), "a plaintiff must allege that two or more persons have conspired to deprive, either directly or indirectly, any person or class of persons of the equal protection of the laws." *St. Martin v. Jones*, 2008 WL 4412267, at *7 (E.D. La. Sept. 17, 2008)(citing *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)). Furthermore, a plaintiff must also allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S. Ct. 1790 (1971); *see Deubert v. Gulf Federal Savings Bank*, 820 F.2d 754, 757 (5th Cir. 1987) (holding that in the Fifth Circuit, plaintiffs must state a race-based

motivation in order to bring a § 1985(3) conspiracy claim) ("[I]t is well-established in this circuit that the only conspiracies actionable under section 1985(3) are those motivated by racial animus.").

When considering whether a plaintiff has sufficiently alleged a claim under § 1985(3), the Court has held that a plaintiff's allegations can be "substantiated by circumstantial evidence because 'conspirators rarely formulate their plans in ways susceptible of proof by direct evidence.'" *St. Martin*, 2008 WL 4412267, at *7-8 (quoting *Smith v. Tangipahoa Parish Sch. Bd.*, 2006 WL 3395938, at * 17 (E.D. La. Nov. 22, 2006)). In *St. Martin*, the Court found that the plaintiffs alleged sufficient facts to make out a § 1985(3) claim by stating that there was a litany of complaints against one defendant and that the other defendants knew about the complaints but chose not to act upon them. 2008 WL 4412267, at *8.

The record shows that O'Neil DeNoux who formerly worked for the SLU Police Department as a Police Investigator was present during a staff meeting of Prescott's inner circle. DeNoux states that he heard Prescott announce that he wanted to get rid of his road sergeants and that only way to do it was through a paper trail of complaints. (Affidavit O'Neil DeNoux, October 22, 2015, ¶7)

Further, DeNoux states thereafter Prescott began flooding HR with complaints on certain individuals including Jones. (Id. at ¶8) DeNoux attests that he initiated an investigation on April 30, 2012, and while he was still investigating the matter, Prescott prematurely gave Jones a letter recommending that she be suspended. (Id. at ¶ 18) At the conclusion of DeNoux's investigation, he found that the charges against Jones were unfounded and his investigation did not end until June 27, 2012. (Id. at ¶17) DeNoux maintains that Prescott is an "aggressor [and a] bully" and that Jones faced harassment in the department that never subsided. (Id. at ¶ 5)

During the course of DeNoux's investigation, McGill sent an email to DeNoux which stated that he "seemed to have lost sight of the scope of the investigation." (Id. at ¶ 22) Later,

7

DeNoux and McGill met to discuss the investigation and DeNoux left with the impression that Prescott was the moving force between McGill's communications with him. (Id. at ¶ 23) DeNoux attests that he believed that Knudsen and Prescott sought to control and stifle the scope of his investigation and he called for an investigation of SLUPD's administration for possible violations of university policies and procedures. (Id. at ¶ 28)

DeNoux also observed Knudsen spying on Jones during her crosswalk assignment. (Id. at ¶ 41) DeNoux further maintains that racism has been a constant in the "all-white" department. *Id.* He notes that during his nine years in the department there were only two African-American officers hired and that both left because of complaints of racism. (Id.) Further, DeNoux states that Knudsen showed misogynistic tendencies and made racist remarks, including his statement that "a black woman has her needs" after being informed that Jones is married to a white man. *Id.* DeNoux further states that incredibly Jones was fired by Knudsen who also sued her for damages for reverse discrimination. (Id. at ¶ 71)

In considering the evidence submitted consisting of the letter terminating Jones and the affidavit of DeNoux, the Court finds that there is a genuine issue of material fact as to whether Prescott, Knudsen, and McGill conspired to create reasons to terminate Jones, even if neither of them had the authority to terminate Jones or Gandolfo.

  **B.**  **<u>Conspiracy to Terminate Gandolfo</u>**

As to Gandolfo, the defendants contend that Brady, the Human Resources Directors, did not cite either her gender or race in the termination letter. According to the defendants, Gandolfo testified that she was terminated from her job as an Administrative Assistant 1 for having low leave balances. (Rec. Doc. 59, p. 7) As a result, the defendants contend that Gandolfo was terminated for reasons other than race or gender.

Gandolfo does not provide any response to the defendants' allegation that she does not have any evidence that they conspired against her. Gandolfo only contends that low leave

balances were merely pre-textual grounds used to disguise the actual race and gender reasons for terminating her in April 2012.

The only evidence presented in opposition to the defendants' motion for summary judgment as to Gandolfo's claims is the affidavit of DeNoux. DeNoux's affidavit only attests to his knowledge regarding Jones's claims against Prescott, Knudsen, and McGill. It makes no mention of Gandolfo nor does he asserts facts that the defendants conspired to terminate Gandolfo. Gandolfo's own testimony acknowledges that she was told by Kevin Brady that she was terminated due to her low leave balance and she believed she had six hours of leave time left, which is a non-discriminatory reason. (Rec. Doc. 59-4, p. 54, lines 22-25; page 55, lines 1-4) Accordingly, there is a no genuine issue of fact as to whether Defendants conspired to create a hostile work environment to terminate Gandolfo.

    **C.**    **<u>No Authority to Terminate Jones or Gandolfo</u>**

The defendants next contend that the plaintiffs claim fails because neither of them had the authority to terminate Jones or Gandolfo. They contend therefore that the 1985(3) conspiracy claim should be dismissed because they were without authority to deprive either Jones or Gandolfo of their rights.

In opposition, plaintiff contends that although Prescott no longer worked for SLU when plaintiffs were terminated, he continued to exercise influence over the Police Department. (Rec. Doc. 66-1, p. 2) Plaintiffs further contend that while McGill and Knudsen had no formal position of authority over them, they were in a position due to political influence to cause her to be terminated from her position. (Id.)

An employee of a Title VII employer may be liable himself if, as the employer's agent, he exercised supervisory authority over the alleged victim. *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir. 1989). The supervisory employee need not have ultimate authority to hire or

fire to qualify as an employer as long as he or she has significant input into such personnel decisions. (Id.)

Furthermore, an employee may exercise supervisory authority over the plaintiff for Title VII purposes even though the company has formally designated another individual as the plaintiff's supervisor. As long as the company's management approves or acquiesces in the employee's exercise of supervisory control over the plaintiff, that employee will hold "employer" status for Title VII purposes. *See Hamilton v.* Rogers, 791 F.2d 439 (5th Cir. 1986) (holding that agents of the employer despite their intermediate standing wielded authority to the claimant's detriment were employers for Title VII purposes).

Indeed, so long as Prescott (Police Chief), Knudsen (Sergeant), and McGill (Captain) exerted authority as supervisors over the terms and conditions of Jones and Gandolfo's employment, they may be an employer of theirs under Title VII. There is no dispute that Prescott, Knudsen, and McGill were Jones and Gandolfo's supervisors. They had authority over matters such as car assignments and the staffing of shifts, and they wielded this authority to Jones's and Gandolfo's detriment. Even more importantly, they conducted investigations which led to Jones being disciplined and ultimately terminated and Gandolfo being terminated for low leave level. Thus, while the extent of their control and authority is unclear and requires further development at trial, plaintiffs have raised a triable issue of fact.[1]

## V. Conclusion

Accordingly,

**IT IS ORDERED** that the Defendants' **Motion for Summary Judgment (R. Doc. 59)** is **GRANTED in part and DENIED in part**.

**IT IS GRANTED** as to Rasheda Gandolfo's 42 U.S.C. § 1985(3) claim against Defendants Michael Prescott, Kevin Knudsen, and Mike McGill. Accordingly, Rasheda

---

[1] This analysis does not affect the prior determination that there is no genuine issue of fact as to whether Defendants conspired to create a hostile work environment to terminate Gandolfo. Thus, even if they were her supervisors there is no allegation that they conspired to have her terminated.

Gandolfo's 42 U.S.C. § 1985(3) claim against Defendants Michael Prescott, Kevin Knudsen, and Mike McGill is **DISMISSED WITH PREJUDICE**.

**IT IS DENIED** as to Angela Jones's 42 U.S.C. § 1985(3) claim against Defendants Michael Prescott, Kevin Knudsen, and Mike McGill.

New Orleans, Louisiana, this 26th day of February 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**